UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| ANTHONY D. HOLLAND, | : | |
|---|---|---|
| Plaintiff, | : | Civil Action No.: 16-0537 (RC) |
| v. | : | Re Document Nos.: 13, 14 |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL; GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF AFFIRMANCE

### I. INTRODUCTION

Plaintiff Anthony Holland unsuccessfully applied for supplemental security income (SSI) benefits. After an SSA Administrative Law Judge (ALJ) rejected his application, Mr. Holland sought review of that decision from this Court. After the Court referred this case to Magistrate Judge Deborah A. Robinson for full case management, Magistrate Judge Robinson recommended that the Court affirm the ALJ's denial of benefits. Because the Court agrees with Magistrate Judge Robinson's conclusions, the Court will adopt the report, grant the Defendant's motion for affirmance, and deny Mr. Holland's motion for reversal.

---

[1] Acting Secretary Berryhill is substituted as a defendant in accordance with Federal Rule of Civil Procedure 25(d).

## II. FACTUAL BACKGROUND

### A. Administrative Proceedings

Mr. Holland applied for SSI benefits in 2010. Compl. ¶ 5, ECF No. 3-2; AR 142, 302, ECF No. 10. He reported that he suffers from "severe bipolar disorder . . . and post-traumatic stress disorder, which was exacerbated by sexual and physical assault as a child, assaults and gang rape as an adult in prison, and nearly eight years spent in solitary confinement." *See* Pl.'s Mot. J. Reversal at 1, ECF No. 13.[2] Mr. Holland's application was denied initially and again on reconsideration. Pl.'s Mot. J. Reversal at 1. The first hearing took place on June 19, 2012. *Id.* On July 24, 2012, ALJ Larry Banks denied Mr. Holland's claim, finding that he was not disabled within the meaning of the Social Security Act.[3] AR 149. Mr. Holland successfully administratively appealed,[4] so ALJ Banks held another hearing on May 1, 2014. Pl.'s Mot. J.

---

[2] Plaintiff asserts that his disability period began on April 1, 2008. AR 348.

[3] The ALJ examined the merits of Mr. Holland's claim using the five-step sequential evaluation process for determining whether an individual is disabled. AR 142–49. The ALJ found that, although Mr. Holland had bipolar disorder with generalized anxiety, degenerative disc disease, and drug and alcohol abuse, AR 144, Mr. Holland's impairments do not meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. AR 144–46. The ALJ specifically found that "[i]n activities of daily living, the claimant has no restriction" and "[i]n social functioning, the claimant has moderate difficulties." AR 145. Moreover, the ALJ determined that Mr. Holland "has the residual functional capacity to perform a full range of work at all exertional levels . . . carrying out simple instructions with occasional contact with co-workers, supervisors, and the public." AR 146. The Vocational Expert concluded that an individual with Mr. Holland's age, education, work experience, and residual functional capacity would be able to work at a variety of jobs represented in the national economy, including: floor waxer, wet wash assembler, pre-assembler for printed circuit boards, and housekeeper. AR 148–49.

[4] The Appeals Council vacated the ALJ's first decision because the ALJ failed to identify and discuss the opinion of Mr. Moore. AR 155–56. Additionally, the Appeals Council ordered the ALJ to "[g]ive further consideration to [Mr. Holland's] maximum residual functional capacity" and "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Mr. Holland's] occupational base." AR 156.

Reversal at 2. On June 27, 2014, the ALJ again denied Mr. Holland's claim, but this time the Appeals Council affirmed the denial. *Id.*

In the second hearing, the ALJ used the five-step sequential evaluation process for determining whether an individual is disabled, as outlined in 20 C.F.R. § 416.920(a). AR 11–12. As a general matter, "[t]he law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . . To meet this definition, [the claimant] must have . . . severe impairment(s) that make[] [him] unable to do . . . any . . . substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a). The ALJ found that Mr. Holland has multiple severe impairments—namely, degenerative disc disease and bipolar disorder with generalized anxiety. AR 13. However, he concluded that Mr. Holland's impairments, when considered together or alone, do not meet or medically equal the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. AR 13. In making this determination, he gave "little weight" to the opinion of Plaintiff's treating physician, because his opinion was "inconsistent with the findings of all other providers, . . . inconsistent with his own treatment notes, and . . . not supported by any current treatment notes." AR 18. The treating physician, Dr. Trower, began treating Mr. Holland in February 2011. AR 16. During a January 2012 mental status examination, Dr. Trower reflected in her notes that Mr. Holland had "good hygiene and neat appearance," "normal" speech, "cooperative and friendly" demeanor, "euthymic"[5] mood, and full affect, and "goal directed and logical" thought process. AR 580–81. Her notes also "consistently show[ed] that [Mr. Holland] was stable on medication." AR 18, 584–85, 589–96. In February 2014—over two years after she had last

---

[5] Euthymia is defined a "[j]oyfulness; mental peace and tranquility," or "[m]oderation of mood, not manic or depressed." *Euthymia*, Stedmans Medical Dictionary 307600.

3

conducted a mental status examination of Mr. Holland—Dr. Trower opined that Mr. Holland could not work because he had depression and trouble maintaining concentration, persistence, and pace. AR 715–16.

Other doctors had a different take. Dr. Jaffe examined Mr. Holland in September 2010, at which time Mr. Holland stated that he could not find work because he is an ex-convict. AR 531. Dr. Jaffe concluded, based on a mental status examination, that Mr. Holland had only slight limitations when it comes to "work pressures in a usual work setting." AR 535–38. In October 2010, reviewing the work of Dr. Jaffe, state medical consultant Dr. Murphy reached a similar conclusion; he opined that Mr. Holland "could be expected to complete a normal workweek without exacerbation of psychological symptoms," and "retains the ability to perform repetitive work activities without constant supervision." AR 543. Another doctor, Dr. Kaiser, reached a similar conclusion around the same time. AR 570–71. Some psychiatric treatment notes from April through June 2013 that do not indicate the specific provider document normal mental status findings. AR 16, 699–701. In January 2014, Mr. Holland was examined by Dr. Wangard. AR 610. After conducting a mental status examination, Dr. Wangard concluded that Mr. Holland's mental status was within normal limits, that he had "no limitation in his ability to follow and understand simple directions, . . . to perform simple tasks independently, to maintain a regular schedule, to learn new tasks, to perform complex tasks independently, to make appropriate decisions, or to appropriately deal with stress." AR 613–14. Dr. Wangard also noted that he had no limitations with respect to social interaction or adaptation. AR 614.

ALJ Banks credited the group of doctors who indicated that Mr. Holland's impairments were relatively mild. AR 17–18. He gave "great weight" to Dr. Jaffe and Dr. Wangard, because they were "thorough and objective" and consistent with each other despite being conducted four

4

years apart. AR 17. He also found that their opinions were consistent with Mr. Holland's testimony that he is better able to focus while on his medication. AR 17. He also gave "great weight" to the opinion of Dr. Murphy, because it was based upon the opinions of Dr. Jaffe. AR 17. He gave "little weight" to Dr. Trower's 2014 opinion, because it was inconsistent with the other providers, not supported by her own treatment notes at the time of her evaluations of Mr. Holland, and not supported by any current treatment notes. AR 18.

ALJ Banks also discounted Mr. Holland's own testimony, much of which the ALJ said was unsupported by "objective documentation to support limitations beyond what is in the given residual functional capacity." AR 18. ALJ Banks emphasized that while Mr. Holland testified that he "suffers from depression, anxiety, and panic attacks," he also stated that his medicine makes him "feel[] calmer, more focused, and [makes him] able to sleep." AR 15. This, ALJ Banks reasoned, was consistent with Dr. Trower's notes that he is stable while on his medication. AR 16, 584–85, 589–96. Without his medicine, Mr. Holland stated that he is "irritable, sarcastic, paranoid, and has violent thoughts," and to cope with his confrontational attitude, he stays in his room. AR 15. ALJ Banks emphasized that, "[i]n terms of daily activities, [Mr. Holland] testified that he takes care of his hygiene and grooming, prepares meals, goes to [Alcoholics Anonymous] and [Narcotics Anonymous] meetings as well as church, takes naps, checks his mail, checks with the staff at his [residential program for homeless individuals] if they would like him to do a chore, . . . [and] enjoys playing chess and going for walks on nice days." AR 15. Mr. Holland also testified that he at one point lived with his girlfriend, and maintained a positive relationship with her. AR 16. From these activities and relationships, ALJ Banks concluded that Mr. Holland "experiences good benefit from his medications," and that this is "supported by objective clinical records." AR 18. The ALJ concluded that Mr. Holland has the functional capacity to perform

5

light work because, in his opinion, Mr. Holland has only moderate difficulties in daily living, social functioning, and concentration, AR 13, and the negative effects of his impairments are reduced by his medication, AR 15.[6]

ALJ Banks posed four hypotheticals to the Vocational Expert (VE) during the hearing, in response to which the VE suggested that there are jobs in the national economy that Mr. Holland could hold, in light of his age, education, work experience, and residual functional capacity, in part because his impairments would only lead him to being off-task for five percent of the workday.[7] AR 14–15, 78–82. However, the VE stated that if Mr. Holland were off-task for twenty percent of the day, there would not be jobs available in the national economy. AR 82. Mr. Holland's attorney posed a fifth hypothetical based on Mr. Holland's testimony that he "continuously question[s] peoples' motives . . . [and] feels the need to retreat" for days at a time, requiring him to "stay in [his] room most of the day." AR 87–88. The VE responded that no jobs

---

[6] Mr. Holland stated that with his medication, which includes Zyprexa and Ambien, he feels calmer, more focused, and is able to sleep, and without his medication, he is irritable, sarcastic, paranoid, and has violent thoughts. AR 15, 46–48. Specifically, regarding his back spasms and pain felt when sitting for short periods of time, Mr. Holland stated that medication "sometimes" helps. AR 42–43.

[7] The first hypothetical involved a person "with [Mr. Holland's] age, education, and work experience," AR 78, who can perform work at all exertional levels but with simple instructions, limited contact to others, and, "due to focus or concentration problems, the individual may be off-task up to 5 percent of the work day," AR 79. The VE stated that a person with those qualities would be able to find a job as a warehouse worker or a janitor. AR 79. The ALJ modified the hypothetical (hypothetical two) to "reduce the exertional level now to no more than light exertional activity" without a sit or stand option, and the VE replied that a person in that circumstance could find work as a machine tender or laundry worker. AR 79–80. The ALJ's third hypothetical is the same as the second, but with a sit or stand option for the hypothetical worker. AR 81. The VE stated that the same jobs listed in response to hypothetical two would also "remain within the residual functional capacity of hypothetical three," but that there would be a 10 percent reduction in the number of jobs at the national and the local level. AR 81. Hypothetical four further built on the prior three hypotheticals, but instead of postulating off-task time of 5 percent of the work day, the person would be off-task up to at least 20 percent of the work day. AR 82. The VE said no jobs would exist for a person in those circumstances. AR 82.

would be available to such a person, because, just as with the ALJ's fourth hypothetical, this would require the person to be off-task for twenty percent of the time or more—indeed it would require him to be off-task almost all of the time. AR 88.

### B. Magistrate Judge Robinson's Report and Recommendation

Mr. Holland sought this Court's review of the ALJ's decision in accordance with 42 U.S.C. § 405(g) and 28 U.S.C. §§ 1361, 1383(c)(3). Compl. ¶ 1. He moved for reversal of the ALJ's decision on the grounds that ALJ Banks did not give adequate weight to the opinion of Mr. Holland's treating physician, and erred in varying ways in his application of the five-step evaluation process for determining whether a person is disabled. Pl.'s Mot. J. Reversal, ECF No. 13. Defendant moved for affirmance. Def.'s Mot. J. Affirmance, ECF No. 14. The Court referred the case to Magistrate Judge Robinson for full case management. Order Referring Case to Magistrate Judge, ECF No. 12.

Magistrate Judge Robinson recommended that the ALJ's opinion be affirmed. Report & Recommendation ("R&R") at 18, ECF No. 19.[8] In doing so, Magistrate Judge Robinson found that ALJ Banks's "decision to not give controlling weight to the opinion of . . . [the] treating physician[] was supported by substantial evidence," R&R at 7, because the ALJ credited the

---

[8] Magistrate Judge Robinson's Report & Recommendation found that the ALJ's decision not to give controlling weight to Dr. Trower's opinion was supported by substantial evidence. R&R at 6–9. Magistrate Judge Robinson pointed to inconsistencies with Dr. Trower's own treatment notes, and with Dr. Jaffe's, Dr. Murphy's, Dr. Kaiser's, and Dr. Wangard's opinions. R&R at 8. Magistrate Judge Robinson also concluded that the ALJ's findings in the five-step sequential evaluation process were supported by substantial evidence. R&R at 9–18. In moving through the five-step analysis, Judge Robinson noted that the evidence on which Mr. Holland bases his arguments consists of largely self-reported symptoms, and that only Mr. Holland's "degenerative disc disease and bipolar disorder with generalized anxiety were found to be medically determinable impairments." R&R at 13; AR 12. Magistrate Judge Robinson ultimately concluded that Mr. Holland was not disabled for purposes of receiving supplemental security income, and that the ALJ did not fail to apply correct legal standards. R&R at 18.

testimony of four doctors whose opinions conflicted with the testimony of the treating physician, and because the last mental examination by the treating physician occurred in January 2012—over two years prior to the hearing. *See* R&R at 8–9. Magistrate Judge Robinson also found that, because the ALJ found that Mr. Holland would only be off-task for around five percent of the workday and suffered only "moderate" social limitations, his own testimony suggesting that he could be off-task for twenty percent of the day or more was undercut by substantial evidence.

Mr. Holland objects to the R&R on two grounds. *See* Pl.'s Obj. R&R, ECF No. 20. First, he contends that Magistrate Judge Robinson "ignore[d] . . . the treating physician's opinions . . . [and] the substantial evidence in the record that was consistent with the treating physician's opinion" that Mr. Holland's disability prevented him from working in any occupation. Pl.'s Obj. R&R at 1–2. Second, Mr. Holland argues that Magistrate Judge Robinson failed to adequately respond to his argument that the ALJ ignored his attorney's hypothetical predicated upon his own testimony, and that the record shows that the hypothetical appropriately represented the facts of the case. Pl.'s Obj. R&R at 2.

### III.  LEGAL STANDARDS

Two different legal standards apply to this case. The first standard, which applies to the report and recommendation of a magistrate judge, is *de novo*. The second, which applies to the factual decisions of the ALJ, is the "substantial evidence" standard. The Court analyzes each standard of review in turn.

With respect to the first standard of review, under Local Civil Rule 72.3(b), "[a]ny party may file for consideration by the district judge written objections to the magistrate judge's proposed findings and recommendations issued under [Local Civil Rule 72.3(a)] within 14 days[.]" LCvR 72.3(b). Local Civil Rule 72.3(b) further provides that "[t]he objections shall

8

specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." Under Local Civil Rule 72.3(c), "[a] district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . ." *Id.*; *see also Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013) ("District courts must apply a *de novo* standard of review when considering objections to, or adoption of, a magistrate judge's Report and Recommendation."). The district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions." *Platt v. District of Columbia*, 168 F. Supp. 3d 253, 259–60 (D.D.C. 2016) (quoting Local Civ. R. 72.3(c)). Here, because Mr. Holland objects to certain conclusions in the R&R, the review of the contested portions of Magistrate Judge Robinson's R&R will be *de novo*.

As for the second standard of review, "[p]ursuant to Section 205(g) of the Social Security Act, district courts review decisions of the SSA Commissioner, made through the ALJ, to determine whether [the] findings are supported by substantial evidence in the record." *Porter v. Colvin*, 951 F. Supp. 2d 125, 129 (D.D.C. 2013) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) ("The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." (citations omitted)). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Substantial evidence is "more than a scintilla, but . . . something less than a

9

preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

The substantial evidence standard is "highly deferential" to the ALJ's decision. *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). With that said, "because the broad purposes of the Social Security Act require a liberal construction in favor of disability," the evidence should be viewed to favor the plaintiff. *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994). However, although the district court must "carefully scrutinize the entire record," *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (internal quotation marks omitted), to determine whether the ALJ has "analyzed all evidence and has sufficiently explained the weight . . . given to obviously probative exhibits," *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (quoting *Butler*, 353 F.3d at 999), the district court cannot "re-weigh the evidence and reach its own determination," *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984). *See also Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (holding that the ALJ "cannot merely disregard evidence which does not support his conclusion"). It is the plaintiff's burden to show that the ALJ's decision lacked substantial evidence. *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32–33 (D.D.C. 2014) (citing *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## IV. ANALYSIS

Mr. Holland has two broad objections to the R&R. First, he argues that the ALJ should have credited Mr. Holland's treating physician, and that by failing to do so the ALJ did not support his findings with substantial evidence. Second, Mr. Holland contends that the ALJ should have credited his own testimony, and that if the ALJ had done so he would have had to

find that Mr. Holland's disability prevents him from working. *See generally* Pl.'s Obj. R&R, ECF No. 20. The Court addresses these objections in turn.

### A. Weight of Dr. Trower's Opinion

Mr. Holland argues that the Report & Recommendation simply defers to the ALJ's "'cherry picked' notes of the consulting and other retained physicians" and that Magistrate Judge Robinson did not find that substantial evidence contradicted the treating physician's opinion that Mr. Holland is unable to work. Pl.'s Obj. R&R at 2, 4.

Under the D.C. Circuit's treating physician rule, when "a claimant's treating physicians have great familiarity with [his] condition, their reports must be accorded substantial weight." *See Butler v. Barnhart*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). Such an opinion by a treating physician is "binding on the fact-finder unless contradicted by substantial evidence." *Id.* Under the rule, when an ALJ chooses to reject the opinion of a qualified treating physician, the ALJ is required to "explain his reasons for doing so." *Id.* In light of the D.C. Circuit's opinion in *Butler*, the role of the district court is not to determine whether the treating physician's opinion should have been accorded controlling weight; instead, it is to determine whether the ALJ's decision was supported by substantial evidence. *See id.*

The ALJ considered the totality of medical evidence and evaluations from Mr. Holland's various doctors at step four of the five-part sequential evaluation process for determining whether an individual is disabled. AR 14 ("[T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."). In concluding that Mr. Holland has the residual functional capacity to perform light work consisting of simple instructions and occasional

contact with co-workers, supervisors, and the public, AR 14, the ALJ assigned more weight to the opinions of Dr. Jaffe, Dr. Wangard, and Dr. Murphy than Dr. Trower.[9] ALJ Banks found the non-treating physicians' analysis thorough, reasoned, and consistent over a period of four years. AR 17–18. He also thought their opinions were consistent with Mr. Holland's own testimony about the effect medication has on his conditions. AR 18. ALJ Banks gave Dr. Trower's opinion little weight not only because it was inconsistent with the findings of all other providers, but also because it was seemingly inconsistent with her own treatment notes. In 2011, Dr. Trower stated that Mr. Holland had "normal speech, cooperative and friendly demeanor, euthymic mood and full affect, and goal directed and logical thought process," but then in February 2014—over two years after she had last conducted a mental status examination of Mr. Holland—Dr. Trower opined that Mr. Holland could not work because of persistent depression. AR 17, 580–81, 715–16. Dr. Trower's treatment notes also "consistently show[ed] that [Mr. Holland] was stable" while on his medication. AR 18, 584–85, 589–96. Notably, some of the doctors relied upon by ALJ Banks had examined Mr. Holland after Dr. Trower had last performed a mental status evaluation. AR 18.

---

[9] Plaintiff alleges that these doctors' conclusions are not as contradictory as they might appear from the ALJ's findings, citing medical statements by the doctors. *See* Pl.'s Obj. R&R at 6–8. For example, Plaintiff notes that Dr. Jaffe had not ruled out the possibility of PTSD, Dr. Kaiser said that Mr. Holland "[a]voided eye contact," "[s]pent a considerable amount of time cleaning lint off [his] pants," and "struggled to subtract sevens," and Dr. Wangard noted that Mr. Holland "gets into conflicts with neighbors." Pl.'s Obj. R&R at 6–7. However, Plaintiff never explains how these statements undermine the doctors' ultimate opinions that Mr. Holland's mental impairments are only moderate with respect to his ability to maintain a job in the national economy. It could be that there is medical significance to these statements. But without more, the Court is not in a position to second-guess the ALJ's reasoned determination that these doctors' conclusions are more persuasive than the conclusions of Mr. Holland's treating physician. *See Cunningham*, 46 F. Supp. 3d at 32–33 (noting that it is the plaintiff's burden to show a lack of substantial evidence).

Without opining on whether ALJ Banks came to the correct conclusion (which is not this Court's role), in light of the multiple contradictory doctors who had consistent opinions over the course of four years, the lapse in time between Dr. Trower's last mental status examination of Mr. Holland and her opinion, and the seemingly contradictory notes by the treating physician, the Court concludes that "substantial evidence" contradicted the opinion of Mr. Holland's treating physician, Dr. Trower. *See Butler*, 353 F.3d at 1003. The Court also concludes that ALJ Banks adequately explained his reasons for according little weight to Dr. Trower's opinion. *See id.*

### B. Mr. Holland's Testimony

Mr. Holland's second objection to the R&R is that it ignored his argument about the fifth hypothetical posed to the VE during the administrative hearing. *See* Pl.'s Obj. R&R at 12–14. Plaintiff contends that the hypothetical—which was based directly on Mr. Holland's testimony—shows that Mr. Holland is unable to find a job in the national economy because he is necessarily off-task for twenty percent or more of the day. Pl.'s Obj. R&R at 13. Plaintiff contends that, without discrediting Mr. Holland's testimony, ALJ Banks could not have found that he could hold a job. Pl.'s Obj. R&R at 13–14.

"To properly assess credibility, [an] ALJ's evaluation 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.'" *Petty v. Colvin*, 204 F. Supp. 3d 196, 209 (D.D.C. 2016) (citing *Butler*, 353 F.3d at 1005). In making such an evaluation, an ALJ may "discuss[] why [the claimant's] statements regarding the debilitating severity of his symptoms were not credible in light of the record as a whole." *See id.* at 210. "An

13

ALJ is entitled to find an individual's statements to be less credible when they are contradicted by objective medical reports." *Id.* Indeed, subjective evidence "cannot take precedence over objective medical evidence or the lack thereof." *See Pinkney v. Astrue*, 675 F. Supp. 2d 9, 21 (D.D.C. 2009) (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).

When evaluating a claimant's testimony about his functional capacity, an ALJ may take into account the claimant's level of daily activity. *See Thigpen v. Colvin*, 208 F. Supp. 3d 129, 139 (D.D.C. 2016). In *Thigpen*, the court found substantial evidence for the ALJ's non-disability finding in part because the claimant had previously reported that he "irons and does laundry, goes outside about three times a week, does shopping in stores and online, talks on the phone and visits his brother about two times a week," does chores, and writes music. *See id.*

ALJ Banks adequately explained his finding as to the diminished credibility of Mr. Holland, and his finding was based on substantial evidence. As noted above, substantial evidence supports ALJ Banks's crediting the opinions of Dr. Jaffe, Dr. Wangard, and Dr. Murphy, which suggested, through objective medical evidence, that Mr. Holland only has moderate difficulties in activities of daily living, social functioning, and concentration. AR 13. He supplemented this medical evidence with Mr. Holland's more-concrete testimony about his day-to-day functioning: he leaves his home for substance counseling and church; he does chores; he checks his mail; he enjoys playing chess; he had a positive relationship with his girlfriend. AR 15–16, 18. Like in *Thigpen*, the ALJ reasonably inferred that Mr. Holland's testimony supported the medical evidence suggesting that he is only moderately impaired—at least while he is on his medication. *See* 208 F. Supp. 3d at 139.

Such substantial evidence was sufficient to support ALJ Banks's conclusion that "[C]laimant's allegations are not considered fully credible," and that the VE's answer regarding

a five percent off-task rate was more accurate than the VE's answer regarding Plaintiff's counsel's hypothetical, which seemed to suggest Mr. Holland would have to be off-task nearly all of the time. AR 18. Indeed, as noted by ALJ Banks in discussing Mr. Holland's credibility, "[t]here have been no abnormal mental status findings of record that would warrant limitations beyond what is included in the residual functional capacity." AR 18. It is undisputed that Mr. Holland has certain mental impairments that affect his ability to concentrate and interact with others. But this is precisely why it was determined that he was limited to jobs that involve simple instructions, limited contact with others, and allowed him to be off-task up to five percent of the workday due to his problems related to focus and concentration. ALJ Banks thus had substantial evidence to conclude that "an individual with claimant's age, education, work experience, and residual functional capacity" could find work as a machine tender or laundry worker. AR 19. The ALJ was thus justified in concluding that Mr. Holland "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 19. Because substantial evidence in the record supported ALJ Banks's findings, the Court adopts the magistrate judge's report and recommendation.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal (ECF No. 13) is **DENIED** and Defendant's Motion for Judgment of Affirmance (ECF No. 14) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 29, 2017                                             RUDOLPH CONTRERAS
                                                                   United States District Judge

15